James **WARREN, Jack Warren, Jerry Warren, Robert Warren and Frieda Warren, Plaintiffs-Appellants,**

v.

The **UNITED STATES DEPARTMENT OF the INTERIOR BUREAU OF LAND MANAGEMENT; Nevada Bureau of Land Management; and Does I–X, inclusive, Defendants-Appellees.**

No. 82–4642.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 13, 1983.

Decided Jan. 24, 1984.

Robert J. Peyton, Houston & Peyton, Reno, Nev., for plaintiffs-appellants.

Al J. Daniel, Jr., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BROWNING, WALLACE, SNEED, ANDERSON, TANG, SKOPIL, SCHROEDER, FARRIS, BOOCHEVER, NORRIS, and REINHARDT, Circuit Judges.

SKOPIL, Circuit Judge:

The issue presented is whether jurisdictional limitations on tort claims against the federal government encompass regulations promulgated pursuant to the agencies' claims settlement authority. *See* 28 U.S.C. §§ 2675(a) and 2672 (1982). We decide the case *en banc* to resolve a conflict in our prior decisions. *Compare Graves v. United States Coast Guard,* 692 F.2d 71 (9th Cir. 1982) with *House v. Mine Safety Appliances Co.,* 573 F.2d 609 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171

(1978).[1] The district court applied *House,* holding that 28 C.F.R. § 14.3(e) (1982) is a jurisdictional requirement not subject to waiver. We reverse and remand.

## FACTS AND PROCEEDINGS BELOW

Plaintiffs appeal the district court's dismissal of their wrongful death action against the government. The appellants are the parents and brothers of the decedent, Judith Weese. They allege that her death was the proximate result of the government's failure to properly supervise land under its control.

On April 21, 1983 Robert J. Peyton, an attorney, sent a letter to the Bureau of Land Management ("BLM") in which he stated that he had been retained by appellants to pursue a wrongful death action against the BLM. He contended that the BLM was liable for decedent's wrongful death under the Federal Tort Claims Act. He informed the BLM that he was authorized to make a demand in the amount ·of $100,000. On May 5, 1980 the BLM, through Burton J. Stanley, acknowledged Peyton's letter, enclosed three copies of Standard Form 95, and advised that claims for damages under the Federal Tort Claims Act should be made on that form. In its letter the BLM also advised Peyton that "when submitting the claim, you should comply fully with the provisions of 28 C.F.R. § 14.3(e) requiring evidence of the authority of a legal representative to present a claim on behalf of a claimant." [2]

Peyton subsequently submitted the claims on the appropriate claim form and signed each form in a manner which indicated his representative status. He did not, however, submit any additional documentation regarding his authority.

Despite the government's present contention that the claimants failed to comply with section 14.3(e), the BLM decided their claims on the merits. The decedent's brothers' claims were denied because the BLM concluded that they failed to demonstrate a compensable interest upon which to base a claim. The BLM denied the parents' claims on the ground that the evidence did not indicate that the government was negligent. Appellants subsequently filed this action in the district court.

The district court granted the government's motion to dismiss for lack of jurisdiction. The court concluded that failure of claimants' attorney to present extrinsic evidence of his authority violated 28 C.F.R. § 14.3(e).[3] Relying on *House,* the district court held that failure to satisfy the settlement regulations was a jurisdictional bar. Although it felt such application of the regulations was "supertechnical," the court dismissed the action for lack of jurisdiction.

## DISCUSSION

The jurisdiction of federal courts to entertain actions for damages against the United States is limited by the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C.

---

**1.** The *Graves'* court attempted to distinguish the holding in *House.* 692 F.2d at 74–75. Although the distinctions have some merit, we are not persuaded that the cases are reconcilable.

**2.** 28 C.F.R. 14.3(e) (1982) provides:

A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

**3.** Because we hold that the regulations are not jurisdictional, we need not resolve the question

of whether 28 C.F.R. § 14.3(e) applies to claims signed by attorneys on behalf of claimants.

Particularly in view in Fed.R.Civ.P. 11, which authorizes attorneys to sign pleadings on behalf of clients and provides that such signature constitutes a certificate that there is good ground to support the pleading, the regulation requiring evidence of authority may be subject to a construction that it does not apply to attorneys. The portion of the regulation requiring evidence of authority refers to claims filed by "agent, executor, administrator, parent, guardian, or other representative" without referring specifically to attorneys. The "legal representatives" are referred to in the prior portion of the sentence authorizing attorneys to sign claims.

§ 2675(a) (1982). A plaintiff must first present notice of a claim to the appropriate federal agency.[4] The plaintiff is permitted to sue the United States only after the claim is denied or six months have elapsed without final disposition by the agency. *E.g., Avery v. United States,* 680 F.2d 608, 611 (9th Cir.1982) (claims presentation requirement is jurisdictional).

Federal agencies are authorized by Congress to settle claims. *See* 28 U.S.C. § 2672 (1982). To promote this settlement process, Congress empowered the Attorney General to promulgate regulations pursuant to section 2672. *See* 28 C.F.R. §§ 14.1–14.11 (1982). The government contends appellants' attorney failed to comply with section 14.3(e) of these regulations.

■ We find the relevant statutes and their legislative histories reveal that Congress did not intend to treat regulations promulgated pursuant to section 2672 as jurisdictional prerequisites under section 2675(a).[5] *Accord, Avery,* 680 F.2d at 611; *Adams v. United States,* 615 F.2d 284, 289–90, *amended,* 622 F.2d 197 (5th Cir.1980). Section 2672 states, *inter alia:*

> The head of each Federal agency or his designee, *in accordance with regulations prescribed by the Attorney General,* may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States. . . .

(Emphasis supplied.) The regulations in question were promulgated by the Attorney General pursuant to this authority. Nothing in this language suggests that these regulations are to be applied jurisdictionally under section 2675(a). If Congress intended to authorize the promulgation of jurisdictional regulations, it would have created that authority directly. Congress has never delegated such authority under section 2675(a).

Difficulties presented by the former claims process prompted Congress to amend it. *See Adams,* 615 F.2d at 288–89. Claimants formerly were required to first bring an action in district court against the government if their claims exceeded $2,500. Pub.L. No. 86–238, § 1(1), 73 Stat. 471–72 (1959) (amended 1966). Only after filing could settlement be negotiated. 28 U.S.C. § 2677 (1982); *see also* S.Rep. No. 1327, 89th Cong., 2d Sess. 3 ("S.Rep."), *reprinted in* 1966 U.S.Code Cong. & Ad.News, 2515, 2516 ("USCCAN"). The result was clogging of the courts with many claims that

---

**4.** Section 2675(a) does not clearly define "claim" for purposes of its presentation requirement:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.
>
> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.
>
> (c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

28 U.S.C. § 2675(a) (1982).

**5.** Further evidence against construing section 14.3(e) as a jurisdictional requirement exists in the regulations themselves. The regulations do not purport to define a "claim" for purposes of section 2675:

> *For purposes ... of 28 U.S.C. 2401(b) and 2672,* a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [a written notification of the incident], accompanied by a claim for money changes in a sum certain. . . .

28 C.F.R. § 14.2(a) (1982) (emphasis supplied).

claimants and the government wanted to settle. Government agencies were forced to respond to court filings before engaging in settlement negotiations. Claimants, the courts and the agencies were forced to waste time and money because federal agencies lacked authority to consider settlement prior to court action. S.Rep. at 5–6, USCCAN at 2518.

Under the amended versions of sections 2672 and 2675, all claims must be filed with the appropriate agencies before claimants can bring action in federal court. Congress articulated two purposes for amending the statutes. The first was "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. at 2, USCCAN at 2516. Second, the amendments were thought to provide "for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." S.Rep. at 2, USCCAN at 2515–16.

Congress apparently modeled the claims presentation requirement of section 2675(a) after statutes governing tort claims against municipalities. S.Rep. at 3–4, USCCAN at 2516–17. Those statutes "protect the municipality from the expense of needless litigation, give it an opportunity for investiga-tion, and allow it to adjust differences and settle claims without suit." S.Rep. at 4, USCCAN at 2517 (quoting 18 E. McQuillan, The Law of Municipal Corporations § 53.-153 (3d rev. ed. 1977)). Congress understood these claims presentation statutes as requiring only minimal notice. We find that Congress intended no more for purposes of section 2675(a).

Congress intended the requirements of section 2675 to function independently of section 2672. *Adams,* 615 F.2d at 290. Section 2675 was amended to give agencies sufficient notice to enable them to begin their own investigations. S.Rep. at 4; *Adams,* 615 F.2d at 290. Minimal notice requires claimants to (1) give an agency sufficient written notice to commence investigation and (2) place a value on the claim. *Avery,* 680 F.2d at 610. By denying appellants' claims on the merits, the BLM demonstrated that they had sufficient notice to initiate investigation. The agency's actions are persuasive evidence that the jurisdictional requirement of minimal notice was satisfied.

To interpret section 14.3(e) as jurisdictional would be to impose upon claimants an added burden which would inevitably result in barring otherwise meritorious claims. Such a result would frustrate the purposes of both 28 U.S.C. § 2672 and § 2675(a).[6]

---

**6.** The dissent accuses us of ignoring the goal of reducing the burden on the courts and of reducing the costs to everyone to achieve the goal of fair treatment for claimants. The dissent misconstrues the goals of the FTCA amendments.

Congress intended to eliminate the burden on the courts of having all FTCA claims lodged there first. That procedure not only burdened the courts but was expensive to claimants and the agencies as well. The amendments, as we understand them, were designed to divert all claims to the agencies first to provide claimants who desired settlement the opportunity for it at minimum expense. There is no evidence that Congress wished to restrict access to the courts in cases where settlement was not possible by creating jurisdictional obstacles during the settlement process. Our holding furthers all the goals of the FTCA amendments by promoting settlement in that class of cases where potential for settlement is high without putting at risk claimants who wish to present their claims in court.

It is the course advocated by the dissent which ignores the goals of the FTCA amendments. The dissent apparently concedes that some meritorious claims would inevitably be barred if settlement regulations are jurisdictional. It fails to recognize that costs to claimants would rise and the burden on the courts would increase. All claimants, even those who have no desire to settle or who have claims which, because of their complexity, could not settle in the required six months would have to go through the entire settlement process. Costs to claimants would be further increased by the premium placed upon the careful observance of the settlement regulations. All claimants would be forced to seek attorneys to represent them during the settlement process to increase their chances that, should settlement fail or not be desired, the courtroom doors would not later be found closed. The burden on the courts would increase for, as we observed in *Avery:*

■ Thus, we hold that section 2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim. *Adams,* 615 F.2d at 292;[7] *accord, Avery,* 680 F.2d at 611.[8] This is not to say, however, that regulations promulgated pursuant to section 2672 are rendered meaningless by our holding that they are not jurisdictional requirements under section 2675(a):

> Section 2672 governs agency conduct, including administrative settlement and adjustment of properly presented claims, once notice has been given pursuant to section 2675 ... Noncompliance with section 2672 deprives a claimant only of the opportunity to settle his or her claim outside the courts.[9]

*Adams,* 615 F.2d at 290.

## CONCLUSION

We overrule our holding in *House.* Because the court below applied the incorrect legal standard, we reverse and remand for further proceedings consistent herewith.

REVERSED and REMANDED.

SNEED, Circuit Judge, with whom Circuit Judges WALLACE and J. BLAINE ANDERSON join, dissenting:

This case involves the extent of the federal courts' jurisdiction to entertain suits against the United States based upon the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346, 2401(b), 2671–2680 (1976). The majority holds that the four Standard Form 95s dated April 21, 1980 signed by Peyton with the word "attorney" after his name constituted a proper "administrative claim" for the purposes of 28 U.S.C. §§ 2401(b), 2672, 2675 (1976). Any agent or representative of a claimant can now refuse to comply with the Attorney General's section 2672 regulations requiring "evidence of his authority" to represent the claimant. 28 C.F.R. § 14.3(e) (1982). "[S]ection 2675(a) requires the claimant or his legal representative to file (1) a written state-

---

[I]t would ... be an inefficient use of judicial resources to require more than minimal notice to satisfy section 2675(a). Since the claims presentation requirement is jurisdictional, if it were interpreted to require more than minimal notice, there would be, inevitably, hearings on ancillary matters of fact whenever the agency rejected a claim as incomplete.

*Avery,* 680 F.2d at 611.

7. We are mystified by the dissent's assertion that *Adams* does not support our position. First, the opinion and holding found at 615 F.2d 284 was not "revised," but "clarified" by the subsequent opinion. *Adams v. United States,* 622 F.2d 197, 197 (5th Cir.1980) (per curiam). Moreover, the quotation from the clarifying opinion which the dissent relies on clearly supports our position. The court reiterated that an adequate claim for purposes of section 2675 is one that contains "enough details [about the underlying incident from which the complaint arose] to enable the agency to begin its own investigation." In the case before us, no one argues that the claims lacked sufficient detail to enable the agency to begin its own investigation. The claims only failed to comply with the details of settlement regulations. That is precisely the defect of the claim the *Adams* court considered, *Adams,* 615 F.2d at 285, and held nonjurisdictional.

8. The dissent's limited reading of the holding in *Avery* is unwarranted. The court there defined the extent of the requirements for claims presentation under section 2675: "[W]e hold that where a claimant gives notice of the manner and general circumstances of injury and the harm suffered, and a sum certain representing damages, he has complied with section 2675(a)." *Avery,* 680 F.2d at 611. We hold the same today, and refuse to read into the requirements of section 2675 the extensive requirements in the regulations promulgated pursuant to section 2672.

*Avery* dealt with the interpretation of 28 C.F.R. § 14.4 (1982). Although we are faced here with section 14.3(e), *Avery* is equally relevant since both sections 14.4 and 14.3(e) were promulgated pursuant to 28 U.S.C. § 2672 (1982). *Avery* cites *Adams,* 615 F.2d at 289, for the proposition that the statement of a "sum certain" is a jurisdictional requirement. 680 F.2d at 610. *Adams* so held on the basis of 28 U.S.C. § 2675(b) (1982). 615 F.2d at 289.

9. Appellants also allegedly failed to comply with 28 C.F.R. § 14.4(a). Section 14.4(a) empowers an agency to require a claimant to submit certain evidence for claims based on death. *Avery* held that failure to comply with 28 C.F.R. § 14.4 (1982) was not a jurisdictional bar. 680 F.2d at 611. For the reasons discussed in text, we agree.

ment sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Majority Opinion, at 780. This holding is contrary to the purposes of the 1966 amendments to the FTCA, the existing case law, and traditional notions of administrative efficiency. I respectfully dissent.

## I.

## THE LEGISLATIVE HISTORY OF THE 1966 AMENDMENTS TO THE FTCA

Congress passed the FTCA in 1946 to remove the sovereign immunity of the United States from private tort actions, and, with various exceptions, to equalize government tort liability with that of private individuals in similar circumstances. *See* S.Rep. No. 1400, 79th Cong., 2d Sess. 30 (1946). Under the 1946 FTCA, government agencies had no authority to settle tort claims over $2,500. *See* 28 U.S.C. § 2672 (1964), *amended by* 28 U.S.C. § 2672 (Supp. II 1965–66); H.Rep. No. 1532, 89th Cong., 2d Sess. 6 (1966). Thus, most injured parties had to file suit in federal court to recover. For claims under $2,500, individuals were given a choice to go either to court or to the agency. In most cases, the Attorney General would initiate settlement negotiations between the injured party and the agency only after the suit was filed. Both the government and claimants incurred significant expenses and time delays for a

procedure (filing a suit) that did not aid settlement.

In 1966 Congress amended the FTCA to revise this procedure. Section 2675(a) provided that "An action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency ...." [1] Section 2672 authorized the Attorney General to prescribe regulations applicable to the consideration and settlement of tort claims against the United States prior to suits being filed in federal court. A claimant now has to satisfy an "administrative claim" requirement before the federal courts have jurisdiction to entertain a suit based on the claim.[2]

Congress had three specific purposes in passing the 1966 amendments to the FTCA. It wished to reduce the burden placed on the federal courts by facilitating the settlement of claims at the administrative level, decrease the cost of processing claims at both the administrative and judicial levels, and promote fair and equitable treatment of claimants. *See* H.Rep. No. 1532, *supra,* at 6; S.Rep. No. 1327, 89th Cong., 2d Sess. 11, *reprinted in* 1966 U.S.Code Cong. & Ad. News 2515, 2524 (statement of Nicholas deB. Katzenbach, Attorney General). *See generally* Note, *Claim Requirements of the Federal Tort Claims Act: Minimal Notice Or Substantial Documentation?,* 81 Mich.L. Rev. 1641 (1983) (discussing the legislative history of the 1966 FTCA amendments).

---

**1.** The majority paraphrases section 2675(a) to reflect its assumed conclusion, not the language of the statute. Majority Opinion, at 777, 778. Section 2675(a) requires the claimant to present a claim to the appropriate agency, not simply present notice of a claim.

**2.** Since Congress unquestionably restricted its prior waiver of immunity by establishing an administrative claim requirement, it is our duty to carefully examine the current extent of the waiver. Such a waiver can never be implied; it must be "unequivocally expressed." *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). "[T]he terms of [the] waiver, as set forth expressly and specifically by Congress, define the parameters of a federal court's subject matter jurisdiction to entertain suits brought against [the United States]." *Ware v. United States,* 626

F.2d 1278, 1286 (5th Cir.1980). Consequently, we should interpret the FTCA narrowly for the purposes of determining our jurisdiction in this case. *See Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). "To invoke the jurisdiction of the court a claimant must follow the explicit procedural rules of the FTCA." *Rooney v. United States,* 634 F.2d 1238, 1242 (9th Cir.1980) (citing *Caidin v. United States,* 564 F.2d 284, 286 (9th Cir.1977)). The fact that " '[m]en must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

## II.

### THE MAJORITY OPINION

The majority only considers the goal of fair and equitable treatment of claimants. It ignores the other goals. It relies on three arguments to support its neglect. None are persuasive.

First, the majority argues that the language of section 2672 does not suggest that Congress intended to apply the Attorney General's regulations jurisdictionally. This argument assumes that the claims settlement process and the administrative claim requirement are unrelated. This assumption ignores the fact that the administrative claim requirement serves to facilitate the settlement process which, in turn, serves the three purposes intended to be furthered by the 1966 amendments. *See* S.Rep. No. 1327, *supra*, at 3, *reprinted in* 1966 U.S.Code Cong. & Ad.News at 2517. No one doubts that a claimant must make a "proper" claim presentation under section 2675 for federal jurisdiction to exist. Congress, however, chose not to set forth specific requirements.[3] Instead, it delegated authority to process and settle tort claims to the Attorney General under section 2672.[4] The

---

**3.** An analogous situation is presented by section 402(g)(1)(D) of the Social Security Act. 64 Stat. 485. This section provides that "mother's insurance benefits" are available only to one who, among other qualifications, "has filed application." 42 U.S.C. § 402(g)(1)(D) (1976). The Secretary of Health and Human Services has promulgated regulations pursuant to the Act stating that only written applications satisfy the "filed application" requirement. *See* 20 C.F.R. § 404.601 (1982). The Supreme Court recently upheld the application of this regulation even in a situation where a representative of the Social Security Administration had erroneously told the claimant that she was not eligible under the Act. *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

In *Schweiker* the claimant argued that since she was substantively eligible under the Act, the court should not preclude receipt of benefits simply because she failed to satisfy a procedural requirement. The Supreme Court stated that:

> Congress expressly provided in the Act that only one who "has filed application" for benefits may receive them, and it delegated to petitioner the task of providing by regulation the requisite manner of application. A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits.

*Id.* at 790, 101 S.Ct. at 1472.

**4.** The Attorney General has promulgated regulations governing the processing of claims filed with federal agencies. *See* 28 C.F.R. §§ 14.1–14.11 (1982). Sections 14.2 to 14.4 relate to the proper presentation of an administrative claim.

Section 14.2 establishes when a claim is presented:

> § 14.2 Administrative claim; when presented.
>
> (a) For purposes of the provisions of 28 U.S.C. 2401(b) and 2672, a claim *shall be* deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.
>
> . . . .

*Id.* § 14.2(a) (emphasis added).

Section 14.3 sets forth who may file a claim for the claimant:

> § 14.3 Administrative claim; who may file.
>
> (a) A claim for injury to or loss of property may be presented by the owner of the property, his duly authorized agent or legal representative.
>
> (b) A claim for personal injury may be presented by the injured person, his duly authorized agent, or legal representative.
>
> (c) A claim based on death may be presented by the executor or administrator of the decendent's [sic] estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law.
>
> (d) A claim for loss wholly compensated by an insurer with the rights of a subrogee may be presented by the insurer. A claim for loss partially compensated by an insurer with the rights of a subrogee may be presented by the parties individually as their respective interests appear, or jointly.
>
> (e) A claim presented by an agent or legal representative *shall be* presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

*Id.* § 14.3 (emphasis added).

Section 14.4 enumerates evidentiary and informational requirements:

> § 14.4 Administrative claims; evidence and information to be submitted.

House of Representatives Committee on the Judiciary hearings evidence congressional intent to authorize the Attorney General to proscribe regulations regarding the claim presentation process.[5] Given this congressional intent, we should defer to an agen-

(a) *Death.* In support of a claim based on death, the claimant may be required to submit the following evidence or information:

(1) An authenticated death certificate or other competent evidence showing cause of death, date of death, and age of the decedent.

(2) Decedent's employment or occupation at time of death, including his monthly or yearly salary or earnings (if any), and the duration of his last employment or occupation.

(3) Full names, addresses, birth dates, kinship, and marital status of the decedent's survivors, including identification of those survivors who were dependent for support upon the decedent at the time of his death.

(4) Degree of support afforded by the decedent to each survivor dependent upon him for support at the time of his death.

(5) Decedent's general physical and mental condition before death.

(6) Itemized bills for medical and burial expenses incurred by reason of the incident causing death, or itemized receipts of payment for such expenses.

(7) If damages for pain and suffering prior to death are claimed, a physician's detailed statement specifying the injuries suffered, duration of pain and suffering, any drugs administered for pain, and the decedent's physical condition in the interval between injury and death.

(8) Any other evidence or information which may have a bearing on either the responsibility of the United States for the death or the damages claimed.

(b) *Personal injury.* In support of a claim for personal injury, including pain and suffering, the claimant may be required to submit the following evidence or information:

(1) A written report by his attending physician or dentist setting forth the nature and extent of the injury, nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency. A copy of the report of the examining physician shall be made available to the claimant upon the claimant's written request provided that he has, upon request, furnished the report referred to in the first sentence of this paragraph and has made or agrees to make available to the agency any other physician's reports previously or thereafter made of the physical or mental condition which is the subject matter of his claim.

(2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from his employer showing actual time lost from employment, whether he is a full or part-time employee, and wages or salary actually lost.

(5) If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amounts of earnings actually lost.

(6) Any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed.

(c) *Property damage.* In support of a claim for injury to or loss of property, real or personal, the claimant may be required to submit the following evidence or information:

(1) Proof of ownership.

(2) A detailed statement of the amount claimed with respect to each item of property.

(3) An itemized receipt of payment for necessary repairs or itemized written estimates of the cost of such repairs.

(4) A statement listing date of purchase, purchase price and salvage value, where repair is not economical.

(5) Any other evidence or information which may have a bearing on either the responsibility of the United States for the injury to or loss of property or the damages claimed.

*Id.* § 14.4.

5. The Committee questioned Assistant Attorney General John W. Douglas about the purpose and the effectiveness of the claim presentation requirement. *See Improvement of Procedures in Claims Settlement and Government Litigation: Hearings on H.R. 13650, 13651, 13652, and 14182 Before Subcomm. No. 2 of the House Comm. on the Judiciary,* 89th Cong., 2d Sess. 12–22 (1966). Douglas said that its purpose "is to permit the agencies to review it [the claim] at the onset and have a crack at settling it without necessity of court suit." *Id.* at 18. The discussion focused upon the Congressmen's concerns about the qualifications of individuals representing the government and the claimant during the claim presentation process. In response to a proposed requirement that only attorneys handle all claims settlement, Douglas suggested that the committee add a provision whereby the Attorney General would promulgate regulations to govern the entire process for both the government agencies and claimants. *Id.* at 17, 19–21. This suggestion prompted the amendment of section

cy's reasonable interpretation of its regulations. *Cf. Schade v. Andrus,* 638 F.2d 122, 124 (9th Cir.1981).

The regulations promulgated under section 2672 contain the elements of a "proper" claim presentation. *See* L. Jayson, 2 *Handling Federal Tort Claims: Administrative and Judicial Remedies* § 315, at 17–2 to 17–3 (1983) (summarizing the basic elements of the administrative claim procedure). An "improper" claim fails to satisfy section 2675. Thus, a "proper" claim is inescapably jurisdictional. *See Blain v. United States,* 552 F.2d 289, 290–91 (9th Cir.1977). Admittedly, the authorities reflect some differences with respect to the precise elements of a "proper" claim. In this case, however, it is only necessary to hold that 28 C.F.R. § 14.3(e) establishes one of these elements. No doubt the entirety of 28 C.F.R. § 14.2 and § 14.3 establish other essential elements, but to so decide would take us beyond the necessities of this case. *See infra,* at 786–787.

Second, the majority argues that since "Congress apparently modeled the claims presentation requirement of section 2675(a) after statutes governing tort claims against municipalities," Congress understood that these statutes required only minimal notice.[6] Majority Opinion, at 779. This interpretation of Senate Report No. 1327's reference to the law of municipal corporations is unwarranted. *See* Note, *supra,* at 1648–49. The Senate Report did not cite to state statutes for the definition of a proper "claim presentation." It simply referred to the existence of an administrative claim requirement in a similar context—the law of municipal corporations. S.Rep. No. 1327, *supra,* at 3, *reprinted in* 1966 U.S.Code Cong. & Ad.News at 2517 ("The requirement of an administrative claim as a prerequisite to suit has numerous *precedents* in statutes governing tort claims against municipalities." (emphasis added)). Furthermore, the report cites to statutes that provide for varying claims presentation requirements. *See id.* at 3–4, *reprinted in* 1966 U.S.Code Cong. & Ad.News at 2517–18 (discussing the District of Columbia and Iowa statutes).[7] Congress could not have intended to incorporate each of these varying requirements. Something more specific must have been intended. An inference that "Congress understood these claims presentation statutes as requiring only minimal notice," Majority Opinion, at 779, is without support in the legislative history.

Finally, the majority argues that minimal notice sufficient to let an agency commence an investigation advances the interests of efficiency underlying section 2675(a). To impose additional requirements would tend to bar otherwise meritorious claims, and this would frustrate both section 2672 and section 2675, it is argued. I disagree. To focus only on the goal of "fairness and equitable treatment of private individuals" frustrates other congressional purposes. Congress, to be sure, wanted a "fair" system, but it also wanted one that would facilitate settlements efficiently. The majority imputes to Congress more generosity and less wisdom than history supports.

Of course, Congress realized that the complex tort suits would go to trial. *See*

---

2672. As I interpret the transcript of these hearings, Congress intended that the Attorney General fine tune the administrative claim procedure to be authorized by the 1966 amendments.

6. The majority, citing to the Senate Report, states that "[t]hose statutes 'protect the municipality from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.'" Majority Opinion, at 779. The report quotes this language as the definition of minimal notice. This language refers to the benefits of the administrative requirement

when it is operating efficiently. If this purpose is to be achieved, much more than "minimal notice" is necessary.

7. The District of Columbia statute specifically defines notice as "the approximate time, place, cause, and circumstances of the injury or damage." D.C.Code Ann. § 12–309 (1981). Whereas, the Iowa statute requires that a claimant present his claim to the state appeal board. Iowa Code Ann. § 25A.13 (West 1978). The board must make a "final disposition" of the claim before a claimant can file suit in a state court.

S.Rep. No. 1327, *supra*, at 5, *reprinted in* 1966 U.S.Code Cong. & Ad.News at 2518–19. However, it was envisioned that agencies could handle a vast majority of simple claims with ease, provided that they were fully informed. *Id.* The regulation, 28 C.F.R. § 14.3(e) (1982), was designed to provide an essential part of the required information. *See* L. Jayson, *supra*, § 323.01[2], at 17–66 to 17–67. Only by treating it as having jurisdictional significance can this be accomplished.

The majority's holding is understandable only in light of their conclusion that "[t]he amendments . . . were designed to divert all claims to the agencies first to provide *claimants who desired settlement* the opportunity for it at minimum expense." Majority Opinion, at 779 (emphasis added). This is directly contrary to the language of section 2675(a) and the legislative history.[8] Congress never intended to give claimants an option to go either to the agency or the federal courts. The net result of the majority opinion, however, is to give each claimant this option.

### III.

### THE CASE LAW

For many years, federal courts almost uniformly held that the Attorney General's regulations promulgated under section 2672, including even certain portions of section 14.4, fixed the elements of a proper presentation of an administrative claim for the purposes of section 2675(a). *See, e.g., Swift v. United States,* 614 F.2d 812, 814 (1st Cir.1980) (section 14.4); *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 19–20, 23–24 (3d Cir.1975) (section 14.3); *Lunsford v. United States,* 570 F.2d 221, 223–27 (8th Cir.1977) (sections 14.2 and 14.3); *Caidin v. United States,* 564 F.2d 284, 286–87 (9th Cir.1977) (section 14.3); *Blain v. United States,* 552 F.2d 289, 290–91 (9th Cir.1977) (section 14.3); *Emch v. United States,* 474 F.Supp. 99, 103 (E.D.Wis.1979) (section 14.-4), *aff'd,* 630 F.2d 523 (7th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); *Rothman v. United States,* 434 F.Supp. 13, 16–17 (C.D.Cal.1977) (38 C.F.R § 14.607; Veterans Administration regulations analogous to section 14.4); *Kornbluth v. Savannah,* 398 F.Supp. 1266, 1268 (E.D.N.Y.1975) (39 C.F.R. § 912.7(6); Postal regulations analogous to section 14.-4); *Robinson v. United States Navy,* 342 F.Supp. 381, 383–84 (E.D.Pa.1972) (sections 14.2, 14.3, and 14.4). It is true that the mechanical application of procedural rules produced inequitable results in some cases and limited exceptions were established. *See, e.g., House v. Mine Safety Appliances Co.,* 573 F.2d 609, 617–18 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978). However, such exceptions were fashioned only in unusual and extenuating circumstances. And, the jurisdictional nature of the regulations was preserved by requiring that the claimant show proof that he could have satisfied the regulations at the time of filing the administrative claim. *Id.* It was not enough that the claimant had met the requirement at the time of trial.

In *Adams v. United States,* 615 F.2d 284, *amended and rehearing denied,* 622 F.2d

---

**8.** Before the House of Representatives Judiciary Committee hearings, the Assistant Attorney General made the following comments about the claim presentation requirement.

> Finally, we invite the committee's attention to the bill's requirement that claims must be presented to the agency before suit can be filed in courts. In our view, the maximum 6-month waiting period which this would entail is not excessive. In addition, experience indicates that it would permit settlement of more tort claims at the agency level than would be possible if the filing of administrative claims were merely optional.

*Improvement of Procedures in Claims Settlement and Government Litigation: Hearings on H.R. 13650, 13651, 13652, and 14182 Before Subcomm. No. 2 of the House Comm. on the Judiciary,* 89th Cong., 2d Sess. 16 (1966) (statement of John W. Douglas, Assistant Attorney General).

Contrary to the majority's assertion, Majority Opinion, at 779, 780, Congress intended that claimants bear the cost of a six-month settlement process before they could go to federal court.

197 (5th Cir.1980), the Fifth Circuit articulated a rationale for an abandonment of the jurisdictional nature of regulations promulgated under section 2672. *Adams* involved a situation in which the Air Force argued that the claimant had failed to submit written reports by nongovernmental physicians with itemized bills and expenses for past and future services as required by 28 C.F.R. § 14.4(b) (1982). 615 F.2d. at 287. The Fifth Circuit lists several reasons why this argument was without merit. First, such information was already in the hands of Air Force doctors and hospitals. Second, the court felt that such material was inherently speculative, and it was unfair to force claimants to prove their case before trial to get federal court jurisdiction. It concluded that only "notice" was required to satisfy the administrative claim requirement. The original opinion is indeed sweeping. Yet its application to the facts of this case is questionable when it is read in light of the following amended per curiam *Adams* opinion. 622 F.2d 197, 197 (5th Cir.1980) (emphasis added):

> This case is before us again on the appellee's petition for rehearing. We write only to clarify one part of our prior opinion. *See Adams v. United States,* 615 F.2d 284 (5th Cir.1980). In all other respects, the petition for rehearing is denied.
>
> The present appeal does not present a case in which the notice of claim presented by the claimant in an executed standard form 95 was inadequate in content or detail. *See id.* at 289–90. We deal instead with another problem. We hold that the agency lacks the power to require that the claimant supplement a notice of claim, that contained "enough details [about the underlying incident from which the complaint arose] to enable the agency to begin its own investigation." *Id.* at 292. We reject the first circuit's

[sic] opinion in *Swift v. United States,* 614 F.2d 812 (1st Cir.1980) [ (holding that section 14.4 was a jurisdictional requirement) ], to the extent that it conflicts with such holding. *We have not, however, intimated an opinion as to the effect, if any, a claimant's refusal to comply with an agency's reasonable request for supplemental information to clarify an inadequate claim would have on the issue of jurisdiction in a subsequent action for damages brought pursuant to the Federal Tort Claims Act.*

In this case we have precisely such a refusal.[9] The "revised" *Adams,* therefore, does not support the majority.

In *Avery v. United States,* 680 F.2d 608 (9th Cir.1982), the government argued that the agency could not process the claim because the claimant did not file complete documentation on medical expenses as required by 28 C.F.R. § 14.4 (1982). 680 F.2d at 611. This circuit, relying on *Adams,* used the minimal notice rationale in interpreting the legislative history. The rationale exceeded the necessities of the result. *Avery* merely holds that "[s]ection 2675(a) was not intended to allow an agency to insist on proof of a claim to its satisfaction before the claimant becomes entitled to a day in court." *Id.* That is correct; but in this case we do not face the question of the sufficiency of Peyton's evidence. Here we face a case in which the attorney refused to comply to any extent with a crucial aspect of section 14.3(e). *Cf. Bialowas v. United States,* 443 F.2d 1047, 1050 (3d Cir.1971) (denying FTCA jurisdiction because claimant refused to comply with 28 C.F.R. § 14.2 (1982) after repeated efforts to call this to his attention).

Thus, *Adams* and *Avery* do not support the majority's holding which goes so far beyond that of those cases. Moreover, it

---

9. The agency requested in writing that in submitting his claim, Peyton "should comply fully with the provisions of 28 C.F.R. § 14.3(e) requiring evidence of the authority of a legal representative to present a claim on behalf of the claimant." Letter from Burton J. Stanley, Regional Solicitor, U.S. Department of the Inte-

rior, to Robert J. Peyton (May 5, 1980). Peyton's "refusal to comply with an agency's reasonable request for supplemental information to clarify an inadequate claim," *Adams,* 622 F.2d at 197, should deprive this court of jurisdiction under section 2675(a).

implements an unprecedented "estoppel or waiver" theory against government agency action. The majority finds that "[b]y denying appellants' claims on the merits, the BLM [agency] demonstrated that they had sufficient notice to initiate investigation." Majority Opinion, at 779. Under this view, any agency that has begun an investigation is estopped from arguing that the failure to present a proper claim deprives the federal courts of jurisdiction. This result conflicts with the well-settled principle that "[w]here jurisdiction has not been conferred by Congress, no officer of the United States has power to give any court jurisdiction of a suit against the United States." *Minnesota v. United States*, 305 U.S. 382, 388–89, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). Courts should determine whether a claimant has met the "presentation of a claim" jurisdictional requirement of section 2675(a) irrespective of an agency's actions in that particular case.[10] *See Powers v. United States*, 390 F.2d 602, 604 (9th Cir. 1968); *Pittman v. United States*, 341 F.2d 739, 741 (9th Cir.), *cert. denied*, 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1969); *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 617 (9th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978); *Driggers v. United States*, 309 F.Supp. 1377, 1379 (D.S.C.1970). *See also Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

*Adams* and *Avery*, however, constitute understandable responses to appealing situations. Both were concerned with efforts by the United States to have the entirety of 28 C.F.R. § 14.4 treated as jurisdictional. There was good reason to resist that effort inasmuch as that regulation pertains to often quite detailed "evidence and information" that relates most directly to the existence and magnitude of the claimant's injury. To treat each of these requirements as jurisdictional is to approach closely making proof of a claim satisfactory to the agency a jurisdictional prerequisite to suit upon it in federal court. This distorts the concept of jurisdiction substantially; the concept refers to the power to hear and decide a claim, not to the hearing and decisional process itself. Moreover, to impart jurisdictional significance to each requirement to furnish "evidence and information" that is, or might be, set forth in section 14.4 exposes that section to the charge of being arbitrary and capricious. So interpreted, section 14.4 would mean that in many situations jurisdiction could exist only when not needed. Thus, *Adams* and *Avery* merely stand for the wise proposition that courts should be wary in treating each and every possible requirement under section 14.4 as jurisdictional. Nothing in this dissent is intended to suggest that this wariness is improper.

### IV.

### REASONS WHY 28 C.F.R. § 14.3(e) SHOULD BE JURISDICTIONAL

The situation with respect to section 14.-3(e) is quite different, however. *See supra* note 4. The majority's holding imposes upon the United States the burden of securing evidence of an agent's authority rather than charging the claimant and his agent with the duty of furnishing evidence as a condition to filing a claim. The result is a waste of public and private resources which easily could be avoided. No one can seriously dispute either the utility of providing the United States with evidence of an agent's authority to file an administrative claim or the low cost of requiring that evidence be provided by the claimant and his agent. To compare this burden with some of those imposed by section 14.4 is to compare the lifting of a feather with the hoisting of a boulder.

The majority holds that the United States must inquire of the agent respecting the source of his authority prior to engaging in serious settlement negotiations. Inquiry and response following the filing of the Standard Form 95s will entail needless delay that serves no public interest. The majority places a burden on each agency to

---

**10.** One can only guess the uncertainty created by the majority's inquiry into notice sufficient to enable the agency to investigate when no such investigation has been conducted.

engage in discovery of information that is readily available to the claimant. *Cf. Rothman v. United States,* 434 F.Supp. 13, 17 (C.D.Cal.1977) ("Such information was within the sole control of plaintiffs, and by withholding it they automatically frustrated the purpose of Congress in requiring an administrative claims procedure in the first place."). The majority's position will tend to force more cases to trial. This is contrary to the intent of Congress.

No doubt the appeal of the majority's position springs in part from the fact that attorneys frequently sign documents on behalf of clients which are accepted by courts and other agencies without their production of authorization by the client. The professional standing of attorneys authenticates the document's representation of authority. Such misrepresentations as might occur are handled by disciplinary proceedings, not by the imposition of the duty of filing a generally unnecessary document. This line of thought overlooks two important considerations. First, attorneys have no monopoly on filing administrative claims under the FTCA. Second, claims frequently involve more than one individual injured by a single act. Section 14.3(e), as I would interpret it, provides for a workable settlement process in these two situations.

Congress clearly indicated that claimants would not have to "engage a lawyer" in the settlement process. *Improvement of Procedures in Claims Settlement and Government Litigation: Hearings on H.R. 13650, 13651, 13652, and 14182 Before Subcomm. No. 2 of the House Comm. on the Judiciary,* 89th Cong., 2d Sess. 13 (1966) (statement of John W. Douglas, Assistant Attorney General). The filing of administrative claims by non-attorneys does not constitute the unauthorized practice of law. When a claim is filed by one who is neither the claimant nor the attorney, authentication of authority is lacking absent compliance with a requirement such as 28 C.F.R. § 14.3(e) (1982).

Under the majority's view, a non-attorney can file on behalf of another by indicating on the Standard Form 95 that he signs as an "agent." [11] This would satisfy section 2675(a) even though, as previously pointed out, it would impose on the government the necessity of choosing between time consuming inquiries about the "agent's" authority prior to initiating settlement discussions or forgoing such discussions and rejecting the claim.

The situation is no different when the claim is presented by, as the regulation puts it, an "executor, administrator, parent, guardian or other representative." 28 C.F.R. § 14.3(e) (1982). It is true that the "evidence of authority" required by the regulation will be somewhat different in each case. However, this merely underscores the bleakness of the government's choices when "evidence of authority" is not jurisdictional. Doubts about authority may so impair the government's settlement efforts as to call into question the utility of the entire administrative claim procedure. Since this result certainly will defer more settlements until after litigation has commenced, one unintended result will be to strengthen the competitive hand of lawyers in this field of torts.

A second consideration that the majority ignores is the manner in which its holding will function when numerous persons are injured by a single event. This circuit adopted the rule, first employed by the Third Circuit, that neither a single claimant nor his agent can file a claim on behalf of a class consisting of all those injured in the absence of its being accompanied by evidence of authority to represent each class member. *See Caidin v. United States,* 564 F.2d 284 (9th Cir.1977); *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11 (3d Cir.1975). *See also Blain v. United States,* 552 F.2d 289, 291 (9th Cir.1977). The logic of the majority's position suggests these cases are wrong. Apparently an agent of one victim now can file on behalf of all, provided he

---

**11.** A contrary view would be unsupportable. How could 28 C.F.R. § 14.3(e) be nonjurisdictional for attorneys and jurisdictional for all others?

can demonstrate that he possesses authority from each at the time of trial. This too will strengthen the hand of an attorney who is quick off the mark.

The requirement that an attorney or representative provide evidence of his authority prevents unauthorized agents, including attorneys, from initiating settlement negotiations before informing the victims of their efforts. It forces both the agent and the claimant to make an affirmative choice as to representation. The requirement represents sound public policy that contributes both to the goal of efficiency and to protection of the claimant.

## V.

## CONCLUSION

Obviously the result reached in this particular case is not of monumental importance. Its significance consists of the breadth of the majority opinion which reduces the jurisdictional element of an administrative claim requirement to a mere shadow of its former self. In doing this it ignores both legislative and administrative intent and extends the authorities upon which it relies beyond their facts. There is another path to follow. This opinion seeks to mark its route.